1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YONG GUO ,

                    Petitioner,

    v.

NATALIE ASHER,

                    Respondent.

CASE NO. 2:20-cv-01613-RSM-BAT

**REPORT AND
RECOMMENDATION**

      Petitioner, a citizen of the People's Republic of China ("China"), is detained by U.S.

Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center

("NWIPC"). Dkt. 1. On October 28, 2020, he submitted for filing his second petition for relief

under 28 U.S.C. § 2241 and a motion for a Temporary Restraining Order (TRO) requesting the

Court direct respondents to immediately release him from custody. Dkt. 1. For the reasons

below, the Court recommends **DENYING** relief the § 2241 habeas petition and motion for

temporary release and **DISMISSING** the habeas petition with prejudice.

## BACKGROUND

      Petitioner has appeared before the Court in a criminal matter (*United States v.* Guo, 2:15-

cr-00023-MJP) and in a habeas petition requesting release from immigration custody. As to

petitioner's immigration custody, the Court dismissed petitioner's first § 2241 habeas petition on

REPORT AND RECOMMENDATION - 1

June 18, 2019, dkt. 17, and the Court of Appeals for the Ninth Circuit denied review stating:

> Guo became subject to a final order of removal and entered the removal period on June 26, 2019, when this court denied his motion for a stay of removal in No. 19-70294. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 (9th Cir. 2008). Accordingly, he is now subject to mandatory detention. See 8 U.S.C. §1231(a)(2). Because Guo is now subject to mandatory detention under 8 U.S.C.§1231(a)(2), the court cannot grant the requested relief from detention under 8 U.S.C. § 1226(a), and therefore, we grant the motion to dismiss this appeal as moot (Docket Entry No. 7). *See Abdala v. INS*, 488 F.3d 1061, 1064 (9th Cir. 2007).

Dkt. 26, *Guo v. Nielsen, et al.*, 2:18-cv-01557-RSM.

In the present § 2241 action, petitioner again asks for release, this time wrapping in a motion for TRO for the purpose of requesting immediate release. Dkt. 11. As grounds for relief, petitioner contends (1) the agency's detention decisions are erroneous; (2) he is vulnerable to the impact of COVID-19; (3) China will not accept "petitioner being deported"; and 4) he is entitled to release under *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.*

In support, petitioner contends the Immigration Judge's (IJ) determination that he is a danger to the community and a risk of flight, affirmed by the BIA on October 14, 2020, is "erroneous and invalid." *Id.* at 5. Petitioner argues he is not a danger because the conduct underlying his federal criminal convictions involved smuggling of items that could not be assembled into a firearm, and he possessed a valid hunting license and thus his possession of firearms was legal. *Id.* at 5-6. Petitioner contends his convictions "are much less dangerous as the speculation of the IJ and BIA panel," and the "factual evidence are not sufficient neither to support IJ's finding or conclusion nor the BIA panel's affirmation that Petitioner is a 'danger to the community.'" *Id.* at 7. Petitioner also contends he should be released because his criminal conduct occurred before July 2014 and he served a long prison sentence. *Id.*

REPORT AND RECOMMENDATION - 2

As recounted in the report and recommendation filed in petitioner's first § 2241 action,

petitioner's federal criminal conviction involved the following facts:

> On May 8, 2015, while his removal proceedings were pending, Mr.
> Guo pleaded guilty to smuggling goods from the United States, *see*
> 18 U.S.C. § 554, and using false information on postal documents,
> see 18 U.S.C. § 1342. Dkt. 9-3. According to the written plea
> agreement, the parties agreed to the following facts. *Id.* at 12.
> Between August 2012 and June 2014, Mr. Guo purchased and
> acquired tens of thousands of dollars of firearms, firearms
> components, and ammunition. *Id.* Mr. Guo used some of these
> items personally and sold other items to customers in China and
> Hong Kong. *Id.* United States Postal Service records document
> more than 80 international shipments made by Mr. Guo to his
> customers in Asia. *Id.* Some of these shipments included
> contraband firearms, firearms components, and/or ammunition. *Id.*
> To evade law enforcement detection, Mr. Guo used false names
> and addresses on the packages, as well as false information on the
> customs declarations. *Id.* at 12-13. Mr. Guo knew that what he was
> doing was unlawful. *Id.* 13. The Honorable Marsha J. Pechman
> sentenced him to 36 months imprisonment. *Id.* at 3.

Dkt. 13 (2:18-cv-01557-RSM).

Petitioner next submits he has been detained at the NWIPC since February 2018 and that

"he has always been an energetic, robust and healthy person." Dkt. 11 at 9. He claims NWIPC is

"infamous for unsafe conditions" and he has recently been diagnosed with "multiple sicknesses:

high cholesterol, high blood pressure, pre-diabetes and serious deterioration/loss of vision" and

he is awaiting tests for cancer. *Id.* at 9. Petitioner claims the conditions at NWIPC violate his

Fifth and Eighth Amendment rights and he should thus be released immediately.

Petitioner also contends he should be released as China will not accept him because he is

a "troublemaker." Dkt. 11 at 14. And finally, petitioner claims because China will not accept

him, he is being held indefinitely, and should accordingly be released under *Zadvydas v. Davis.*

*Id.* at 16.

REPORT AND RECOMMENDATION - 3

1    Respondents oppose petitioner's request for relief. Dkt. 6. Respondent alleges petitioner

2    arrived in the United States about August 31, 2011 on a non-immigrant visa. *Id.* at 6. Petitioner

3    requested and was denied asylum and was placed into removal proceedings for overstaying his

4    visa. *Id.* On May 8, 2015, petitioner pled guilty to smuggling goods and using false information

5    and was sentenced to 36 months of imprisonment. *Id. at 5.* After completing his sentence,

6    petitioner was released to ICE custody about December 16, 2017. *Id.*

7    Petitioner was transferred to NWIPC and filed a written plea admitting the charges of

8    removability, i.e. admitting the crimes for which he was convicted. On April 25 and August 1,

9    2018 hearings were conducted regarding petitioner's application for asylum, withholding of

10    removal and protection under the convention against torture. *Id.* at 6. On August 10, 2018, the IJ

11    denied the applications and ordered petitioner removed. The BIA affirmed the IJ's decision and

12    the Court of Appeals for the Ninth Circuit denied further review. *Guo v. Barr*, 793 F. App'x 599

13    (9th Cir. 2020) (mem.)(finding the agency did not abuse its discretion in determining Guo's

14    convictions were particularly serious crimes rendering him ineligible for asylum and

15    withholding of removal; and finding substantial evidence supports the agency's denial of deferral

16    of removal under the Convention Against Torture). *Id.*

17    On October 22, 2018, Petitioner filed his first habeas petition seeking release or a bond

18    hearing*, Guo v. Nielson*, 18-cv-1557-RSM (W.D. Wash.), challenging the lawfulness of his

19    detention. The Court rejected the challenges and the Ninth Circuit dismissed petitioner's appeal.

20    On April 9, 2020, the IJ held an *Aleman* bond hearing at which petitioner was represented

21    by counsel. Dkt. 6 at 7. The IJ found despite the presence of positive factors, respondent had

22    shown by clear and convincing evidence petitioner is both a community and flight risk. *Id.* The

23    BIA affirmed the bond decision on October 14, 2020.

REPORT AND RECOMMENDATION - 4

1    Respondents aver that until November 3, 2020, petitioner refused to cooperate in his

2 removal by repeatedly refusing to sign documents needed to obtain travel documents to China.

3 Petitioner finally agreed to complete and sign travel documents in early November 2020.

4    Respondents also contest petitioner's claims about COVID-19 and the conditions at

5 NWIPC. Respondents contend petitioner is housed in a unit consisting of 64 beds but only 28

6 detainees are in the unit. *Id.* Petitioner is housed in a cell with four beds but shares it with just

7 one person. There is a large common area with 16 tables that seat four people; this allows

8 detainees to sit in the common area with 2 or fewer individuals per table. *Id.* Respondents also

9 contend that based upon the medical opinions of Dr. Malakhova, that petitioner does not meet

10 the criteria for a person facing a high risk due to COVID-19. *Id.*

**DISCUSSION**

12    A litigant seeking a TRO must meet the same standards to obtain a preliminary

13 injunction. Petitioner thus must establish he is likely to succeed on the merits, he is likely to

14 suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in his

15 favor, and an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.

16 7, 20 (2008). When a litigant fails to show he is likely to succeed on the merits the Court need

17 address the remaining *Winter* factors. Petitioner's motion for TRO and his habeas petition ask for

18 the same relief: immediate release from immigrations custody. Because success on the merits are

19 the same for both requests the Court addresses them in a singular fashion: Should the Court grant

20 the habeas petition and order respondents to release petitioner. The Court concludes the relief

21 requested should be denied and recommends the case be dismissed with prejudice.

22    **A.  Statutory Framework**

23    Section 236 of the INA provides the framework for the arrest, detention, and release of aliens

in removal proceedings. That provision provides the Attorney General with discretionary authority to

REPORT AND RECOMMENDATION - 5

release an alien on bond or conditional parole pending the completion of removal proceedings, unless the alien falls within one of the categories of criminal aliens described in Section 236(c), for whom detention is mandatory. *See* INA § 236(c), 8 U.S.C. § 1226(c) ("The Attorney General shall take into custody any alien who" is deportable for having committed certain enumerated crimes); *see also Demore v. Kim*, 538 U.S. 510, 513 n.1, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003) ("Section 1226(c) authorizes detention of aliens who have committed certain crimes including, inter alia, any 'aggravated felony'").

Once removal proceedings have been completed, as is the case here, the detention and release of aliens shifts to INA § 241, 8 U.S.C. § 1231. Section 241(a)(1)(A) of the INA states that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." INA § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A). During the removal period, continued detention is required. INA § 241(a)(2), 8 U.S.C. § 1231(a)(2). Section 241(a)(6) provides the Attorney General with discretionary authority to detain certain aliens beyond the removal period, or to release them under an order of supervision. INA § 241(a)(6), 8 U.S.C. § 1231(a)(6).

The determination of when an alien becomes subject to detention under Section 241 rather than Section 236 is governed by Section 241(a)(1), which provides:

The removal period begins on the latest of the following:

(i)     The date the order of removal becomes administratively final.

(ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)    If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added). As noted above, the removal period in this case began on June 26, 2019 when the Court of Appeals denied petitioner his motion for stay of removal.

REPORT AND RECOMMENDATION - 6

1    Respondent contends, and the Court agrees, 8 U.S.C. §1231 governs petitioner's case because

2    petitioner is the subject of an administrative order of removal that became final in 2019. Dkt. 6 at

3    11. Under § 1231(a), the Department of Homeland Security ("DHS") is required to detain an

4    alien during the 90-day "removal period," which began in 2019. After the removal period

5    expires, DHS has the discretionary authority to continue to detain certain noncitizens, including

6    Petitioner, or to release them on supervision. 8 U.S.C. § 1231(a)(6).

7         Applying these standards, the Court turns to petitioner's claims. Petitioner first claims the

8    IJ's bond decision is erroneous. On April 9, 2020, the IJ held an *Aleman* bond hearing at which

9    petitioner was represented by counsel. Dkt. 6 at 7. The IJ considered the positive factors

10   petitioner presented but concluded respondent established by clear and convincing evidence

11   petitioner is both a community and flight risk based upon petitioner's criminal conduct. *Id.* The

12   BIA affirmed the bond decision on October 14, 2020. Petitioner disagrees and argues the facts of

13   his criminal conviction are not sufficiently egregious to support the IJ's bond decision and the

14   Court should reverse the decision and order his immediate release.

15        The Court may review bond determinations for constitutional claims and legal error, *see*

16   *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011); petitioner fails to show such error.

17   Petitioner disagrees with the agency's evaluation of the facts of his criminal conviction arguing

18   in his view his criminal conduct is not as egregious as the agency found. In this case the

19   underlying facts regarding petitioner's criminal conduct are not in dispute as they were set forth

20   in his plea agreement. The agency considered the facts of the conviction and this is not in dispute

21   either. What is thus in dispute is petitioner's disagreement with the agency's view of the facts.

22   The agency found they established grounds for detention; Petitioner disagrees and argues

23   otherwise.

REPORT AND RECOMMENDATION - 7

1    The IJ weighed the facts of petitioner's criminal conduct and concluded the government

2    established by clear and convincing evidence that petitioner should be detained. The Court

3    cannot find the agency erred by relying upon the facts of petitioner's criminal conduct in finding

4    the government had met its burden of proof. The Court also cannot simply reevaluate the IJ's

5    discretionary bond determination, which is essentially what petitioner asks. That is the Court

6    cannot agree with petitioner's interpretation of his criminal conduct as a basis to reverse the

7    agency's interpretation of his conduct. *See* 8 U.S.C. § 1226(e); *Prieto-Romero v. Clark*, 534 F.3d

8    1053, 1058 (9th Cir. 2008) ("alien may appeal the IJ's bond decision to the BIA, *see* 8 C.F.R. §

9    236.1(d), but discretionary decisions granting or denying bond are not subject to judicial review,

10   *see* § 1226(e)"). In short, while petitioner disagrees with the agency findings and how the IJ

11   weighed the evidence, the record does not establish the IJ committed legal error in examining his

12   criminal conduct and finding the government met its burden proof.

13   Additionally, the Court of Appeals for the Ninth Circuit has held in cases in which §§

14   1226 or 1231 apply, a petitioner who has had a bond hearing before the IJ is not entitled to

15   "periodic" or additional bond hearings. *Flores Tejada v.* Godfrey, 954 F.3d 1245, 1250 (9th Cir.

16   2020). Petitioner is thus not entitled to another bond hearing. Accordingly, petitioner's claim the

17   Court should overturn the IJ's bond determination fails and should be rejected. The Court

18   accordingly recommends the claim be rejected.

19   Petitioner next argues he should be released because of conditions at NWPIC and the

20   impact of COVID-19 his health. The government argues the Court should reject the claim. Dkt.

21   6. The government contends contrary to petitioner's unsupported allegations, he is not at a higher

22   risk for serious illness due to COVID-19; NWIPC has taken strong measures to address COVID-

23   19 including reduction in the detainee population, sanitation measures, screening, testing,

REPORT AND RECOMMENDATION - 8

1    isolation protocols, and limiting visitors; the NWIPC is not plagued with overcrowding and is at

2    23.8 percent capacity; and there have been no positive COVID cases among detainees. In support

3    the government submitted the declaration of Drew Bostick and Sheri Malakhova, M.D. Dkts. 8

4    and 9.

5            The Court agrees and finds petitioner has not shown the conditions of detention violate

6    his rights. The health precautions outlined in the declarations of Mr. Bostick and Dr. Malakhova

7    regarding the steps respondents have taken to prevent the introduction of COVID-19 into the

8    general population at NWIPC and to prevent its spread between units should it be introduced,

9    establishes petitioner has not met his burden of proof to establish a substantial risk of serious

10   harm due to the current conditions of detention at NWIPC. Petitioner disagrees but the Court

11   cannot say NWIPC has failed to take significant action to address the impact of COVID-19 or

12   that the conditions at the facility violate petitioner's rights.

13           Additionally, as to petitioner's health, Dr. Malakhova avers the following:  Plaintiff is 51

14   years old and has no chronic medical conditions. Under CDC guidelines, petitioner's age is not

15   viewed a specific risk factor as he is under the age of 55. Petitioner's cholesterol was tested on

16   January 18, 2020 with normal results of a total cholesterol level of 166 mg/dL. Petitioner has not

17   been diagnosed with hypertension and his medical records do not indicate he has the disorder.

18   On February 19, 2020, petitioner's pressure was 145/85 but he subsequently had five daily

19   normal tests with results about 128/78. In March his pressure was 124/80; in September it was

20   135/77 and on November 5, 2020 it was 131/85. Petitioner has also not been diagnosed with

21   diabetes and pre-diabetes is not on the CDC list of risk factors. Petitioner claims vision problems

22   but vision problems are not on the CDC list of risk factors. Petitioner's medical records do not

23   show deterioration of vision. On January 17, 2020 his vision was 20/50 and 20/70 in the left and

right eyes. In February he was retested and found to have 20/30 vision in both eyes. In

November he was retested and found to have 20/70 vision and has been referred for new glasses.

Petitioner does not have cancer and is not suspected to have cancer. Petitioner has been offered a

colonoscopy but at his clinic visit on November 5, 2020 refused a scheduling for the procedure.

Based upon a review of petitioner's medical records, Dr. Malakhova concludes in her medical

opinion that petitioner is not at a higher risk for serious illness due to COVID-19.

On November 25, 2020, petitioner submitted "supplemental evidence" in support of his

request for release. Dkt. 14. In this pleading plaintiff avers that based upon an eye-examination

performed on November 19, 2020 his vision has gotten worse, and a recent test showed his

blood-pressure is 91/160. *Id.* Petitioner contends he has no faith in the competence of the

medical care he receives. *Id.* This pleading fails to establish a claim that petitioner should be

released because he is particularly vulnerable to COVID-19. As Dr. Malakhova avers, vision

problems are not a CDC risk factor and petitioner's blood-pressure tests over the course of the

year has gone up and down and included long stretches of normal readings.

Having considered the entire record, the Court concludes petitioner has failed to establish

the conditions at NWIPC violate his constitutional rights or that he is so vulnerable to COVID-

19 that he must be released from custody.

Lastly, petitioner argues China will not accepted "petitioner being deported" and he is

therefore entitled to release under *Zadvydas v.* Davis, 533 U.S. 678 (2001). In *Zadvydas*, the

Supreme Court held § 1231(a)(6) implicitly limits an alien's detention to a period reasonably

necessary to bring about removal from the United States and does not permit "indefinite"

detention. 533 U.S. at 701. Detention becomes indefinite if, for example, the country designated

in the removal order refuses to accept the noncitizen, or if removal is barred by the laws of this

country. *See Diouf v. Mukasey* ("*Diouf I*"), 542 F.3d 1222, 1233 (9th Cir. 2008).

Here, respondents contend petitioner's detention is not indefinite and the reason travel

documents have not been secured is petitioner's refusal to sign the documents necessary to obtain

the them. In support, Mr. Bostick avers:

> Petitioner has been a documented failure to comply ("FTC") from the time the Ninth Circuit denied a stay of removal in 2019 until November 3, 2020.  During that time, ICE repeatedly served Petitioner with the Warnings for Failure to Depart (Form I-229(a)), advising him of the legal consequences of refusing to cooperate in his removal, and has requested that Petitioner complete an identity verification and travel document application. Petitioner repeatedly refused to sign the documents needed to get a travel document to effect his removal. According to ICE records, Petitioner refused ICE requests to complete and sign a travel document application on the following dates:  September 26, 2019, November 7, 2019, December 3, 2019, January 2, 2020, February 12, 2020, March 6, 2020, April 2, 2020, April 15, 2020, May 1, 2020, June 8, 2020, July 13, 2020, August 12, 2020, September 8, 2020 and October 5, 2020.  ICE has served Petitioner multiple Notices of Failure to Comply relating to these refusals.   25.On November 3, 2020, Petitioner finally agreed to comply.

Dkt. 8, Bostock Decl. at ¶ 24. Respondent has presented sufficient evidence that rebuts

petitioner's claim he must be released because there is no significant likelihood of removal in the

reasonably foreseeable future, under *Zadvydas*. Specifically, respondents have shown under INA

§ 241(a)(1)(C), 8 U.S.C. § 1231(a)(1)(C), which provides "the removal period shall be extended .

. . and the alien may remain in detention during such extended period if the alien fails or refuses

to make timely application in good faith for travel or other documents necessary to the alien's

departure . . . ." The Ninth Circuit applied this provision in *Pelich v. I.N.S.*, 329 F.3d 1057 (9th

Cir. 2003). *Pelich* was ordered removed to Germany or Poland. Germany denied entry and

*Pelich* refused to cooperate with efforts to obtain Polish travel documents. *Id*. at 1058. The Ninth

Circuit found "Pelich himself is responsible for his plight" because he had refused to fill out a

REPORT AND RECOMMENDATION - 11

Polish passport application, thereby impeding Poland's ability to determine whether it should issue Pelich travel documents. *Id*. at 1059. The Ninth Circuit held "when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Here, petitioner has repeatedly refused to sign travel documents to facilitate his removal to China and agreed only in the first week of November, 2020 to sign them. He accordingly fails to establish there is no significant likelihood of removal in the reasonably foreseeable future and his *Zadvydas* claim should therefore be rejected.

For the reasons above, the Court recommends that petitioner's habeas petition and motion for TRO be denied and the case be dismissed with prejudice.

If this recommendation is adopted, the Court also recommends petitioner's motion for appointment of counsel, Dkt. 12, be stricken as moot.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order.  Therefore, plaintiff should not file a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **December 18, 2020.**  The Clerk shall note the matter for **December 18, 2020**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter

REPORT AND RECOMMENDATION - 12

will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed eight pages.

      The failure to timely object may affect the right to appeal.

      DATED this 4th day of December, 2020.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13